IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WELLS FARGO BANK, N.A.              :

    v.                              :   Civil Action No. DKC 16-0386

TODD EASTHAM, et al.                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this interpleader action are: a motion for entry of order of interpleader filed by Plaintiff Wells Fargo Bank, N.A. ("Plaintiff" or "Wells Fargo") (ECF No. 2); and a motion for entry of default filed by Defendant Mary Eastham ("Mary") (ECF No. 28). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Plaintiff's motion will be granted in part and denied in part, and Mary's motion will be granted.

**I.  Background**

    **A.  Factual History**

Thomas Eastham (the "Decedent") died on June 11, 2013. (ECF No. 1 ¶ 9). The Decedent's last will and testament provided that his estate would be conveyed to the trustees of the Eastham Family Trust (the "Trust"). (ECF No. 1-1, at 3). The Trust agreement named the Decedent and his late spouse as trustees and named their children, Scott Eastham ("Scott") and

Defendant Todd Eastham ("Todd") as successor trustees. (ECF No. 1-2, at 2). Thus, at the time of the Decedent's death, Scott and Todd were the Trust's trustees. Under the Trust agreement, the money in the Trust was to be divided equally between Scott and Todd. Following the Decedent's death, the Trust opened investment accounts with Defendant State Farm Investment Management Corporation ("State Farm"). (ECF No. 1 ¶ 16). On October 10, 2013, before the funds in the Trust were divided, Scott passed away unexpectedly. (*Id.* ¶ 17). Scott's last will and testament left his estate to his wife, Mary. (ECF No. 1-4, at 3).

From 2013 to 2015, as trustee, Todd made multiple transfers from the Trust's accounts at State Farm to a personal checking account at Wells Fargo, which bore both his name and that of the Decedent. The transfers from State Farm were made payable to the Decedent, even after his death. On October 16, 2015, Todd initiated a transfer of $1,033,277.13 (the "Disputed Funds") from his checking account at Wells Fargo to another Wells Fargo account owned jointly by Mary and her sister, Defendant Barbara Abramson ("Barbara"). (ECF No. 1 ¶ 26). In light of this large transfer and other large transactions, Wells Fargo contacted Todd to inquire about the transactions and his use of the account. (*Id.* ¶ 27). Wells Fargo avers that this is the first time it learned about the Decedent's death. (*Id.*). According

2

to Wells Fargo, Todd did not provide requested documentation for the funds and informed Wells Fargo that he was using his personal account to administer the Trust due to tax implications. (*See* ECF No. 29, at 3). Furthermore, Wells Fargo contends that Todd did not provide "adequate assurances that the transfers and withdrawals from the checking account were lawful and [that] Wells Fargo will not face conflicting claims for the disputed funds." (ECF No. 1 ¶ 29). Therefore, Wells Fargo "put an immediate hold on the [Disputed] Funds," which remains in place today. (*Id.* ¶ 28).

**B. Procedural Background**

On February 11, 2016, Wells Fargo filed a complaint in interpleader pursuant to 28 U.S.C. § 1335 and Fed.R.Civ.P. 22 against Todd, the Trust, Mary, Barbara, and State Farm (collectively, the "Defendants"). (ECF No. 1).[1] On the same day, Wells Fargo filed the pending motion for entry of order of interpleader. (ECF No 2). Wells Fargo's complaint and motion contend that an interpleader action is appropriate because there are multiple "actual or potential conflicting claims as to the

---

[1] Statutory and rule-based interpleader actions have slightly different jurisdictional requirements. Plaintiff only asserts jurisdiction under § 1335, and the complaint will be construed as being brought under the statute. The functional difference between the two approaches in the context of this action is, at most, minimal. *See* 7 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure § 1703 (3d ed. 2001).

3

Disputed Funds." (ECF No. 1 ¶ 34). Accordingly, the motion requests that the court: (1) require "Defendants and any other claimants to the Disputed Funds [] interplead here and settle their respective rights and claims to the Disputed Funds"; (2) discharge Wells Fargo "from any liability upon its deposit with the [c]ourt of the Disputed Funds"; (3) permanently restrain "Defendants and any other claimant from bringing or prosecuting any other action against Wells Fargo with respect to the Disputed Funds"; (4) award Plaintiff "its costs and reasonable attorney's fees"; and (5) grant "such other and further relief as the [c]ourt may deem proper." (ECF No. 2, at 6).

Mary, Barbara, and State Farm answered. (ECF Nos. 20; 22; 24). Mary asserts in her answer that she is the sole claimant to the Disputed Funds. (ECF No. 24, at 1-2). Barbara admits that the Disputed Funds were intended solely for Mary. (ECF No. 20, at 1). State Farm's answer "disclaims any interest as to the Disputed Funds." (ECF No. 22 ¶ 33). Todd and the Trust did not answer, and Mary has filed a motion for entry of default against them. (ECF No. 28).[2] Mary and State Farm filed responses to Plaintiff's motion for entry of order of interpleader, objecting to Plaintiff's request for attorney's fees and costs. (ECF Nos. 25; 27). Mary also objects to the

---

[2] As part of its response to Plaintiff's motion, State Farm attaches an e-mail from Todd's counsel stating that "Todd makes no claim to the [Disputed Funds]." (ECF No. 27-1).

case proceeding in interpleader and requests that the court "order Wells Fargo immediately to release the [Disputed Funds] to [Mary] or her designee." (ECF No. 25, at 1). Plaintiff has not replied to State Farm or Mary's responses, and the time to do so has passed. On April 26, 2016, the parties filed a joint status report summarizing their arguments. (ECF No. 29).

**II. Plaintiff's Motion for Entry of Order of Interpleader**

   **A.   Standard of Review**

An interpleader action involves two steps or stages. 7 Wright, Miller, & Kane, *supra* § 1714; *see Rapid Settlements, Ltd. v. U.S. Fid. & Guar. Co.*, 672 F.Supp.2d 714, 717 (D.Md. 2009). In *Metro. Life Ins. Co. v. Vines*, No. WDQ-10-2809, 2011 WL 2133340, at *2 (D.Md. May 25, 2011), Judge Quarles explained them:

> During the first stage, it must be determined whether the stakeholder has properly invoked interpleader. *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007); *Fed. Ins. Co. v. Parnell*, No. 6:09CV00033, 2009 WL 2848667, at *4 (W.D.Va. Sept. 3, 2009). The propriety of interpleader depends on whether the stakeholder "legitimately fears" multiple litigation over a single fund. The Court considers whether: (1) it has jurisdiction over the suit; (2) a single fund is at issue; (3) there are adverse claimants to the fund; (4) the stakeholder is actually threatened with multiple liability; and (5) equitable concerns prevent the use of interpleader. *High Tech.*, 497 F.3d at 641; *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999).

5

> If interpleader is proper, the Court may direct the funds plus interest to be deposited with the Clerk, dismiss the stakeholder with prejudice and discharge it from all liability with respect to the deposited funds, and prohibit the claimants from initiating or pursuing any action or proceeding against the stakeholder regarding the relevant insurance policy or plan. *See, e.g., High Tech.*, 497 F.3d at 641; [*Companion Life Ins. Co. v. Haislett*, No. 3:10-1586-JFA, 2010 WL 3879338, at *3 (D.S.C. Sept. 28, 2010)].
>
> During the second stage, a scheduling order is issued and the case continues between the claimants to determine their respective rights. *See, e.g., Rhoades*, 196 F.3d at 600; *Leventis v. First Nat'l Ins. Co. of Am.*, No. 3:09–1561–JFA, 2010 WL 2595305, at *2 (D.S.C. June 23, 2010). The claimants engage in the "normal litigation processes, including pleading, discovery, motions, and trial." *High Tech.*, 497 F.3d at 641.

In federal interpleader actions, a district court has the authority to:

> [I]ssue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. . . . Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

28 U.S.C. § 2361. Generally, the interpleader plaintiff will "admit liability, deposit the fund with the court, and be permitted to withdraw from the proceedings." *CMFG Life Ins. Co.*

6

*v. Schell*, No. GJH-13-3032, 2014 WL 7365802, at *2 (D.Md. Dec. 22, 2014) (citing *J.G. Wentworth Origination, LLC v. Mobley*, 2012 WL 4922862 at *5 (D.Md. Oct. 12, 2012)); *see Parnell*, 2009 WL 2848667, at *4 ("[T]he Interpleader Act permits [the plaintiff] to [interplead] its [p]olicy limit and to obtain 'a discharge . . . from further liability' with prejudice, as well as a permanent injunction restraining claimants 'from instituting or prosecuting any proceeding in any State or United States court affecting the' [p]olicy." (citations omitted)).

Section 1335(a) grants the district courts original jurisdiction over interpleader claims involving at least $500.00 in funds or property and at least two claimants of diverse citizenship. *See Fidelity & Guar. Life Ins. Co. v. Harrod*, No. CCB-05-2732, 2006 WL 1911077, at *2 (D.Md. May 25, 2006) ("The claimants must be at least minimally diverse.").

**B.   Analysis**

**1.   Propriety of Interpleader**

> Developed over six hundred years ago by the common law courts of England, interpleader is a procedure used to avoid excessive litigation in instances of multiple claimants to a single stake. For the uncertain stakeholder, interpleader is the law's answer to the mythical dilemma of Scylla and Charybdis. Without the option of interpleading funds, and faced with genuinely competing claims to a stake, the stakeholder is left with the unappealing prospect of either choosing one claimant over the other and facing action by the

7

> disappointed suitor or holding the stake and awaiting suit by both. The repository of the Court provides the stakeholder with the only safe harbor when caught between such a rock and a hard place.

*Commerce Funding Corp. v. S. Fin. Bank*, 80 F.Supp.2d 582, 584-85 (E.D.Va. 1999) (citation omitted). "The propriety of interpleader depends on whether the [interpleader] 'legitimately fears' multiple litigation over" a single fund. *Nash & Assocs., LLC v. Gwynn*, No. WDQ-14-0376, 2014 WL 3428933, at *3 (D.Md. July 10, 2014) (citing *High Tech.*, 497 F.3d at 642). Section 1335 expressly provides that an interpleader action is appropriate to resolve *potential* claims. *See id.* at *4 n.8 (citing to cases noting that "to sustain an interpleader, [the plaintiff] is required only to prove the existence of adverse claimants who *could* attempt to claim these funds"). "In order to achieve the important benefits of securing a prompt and inclusive determination in a single action of the rights of all the parties claiming an interest in the stake, courts should not hesitate to allow interpleader even when prospective claims are involved" as long as they do not "fall below any meaningful threshold level of substantiality." 7 Wright, Miller, & Kane, *supra* § 1707.

Wells Fargo asserts that an interpleader action is appropriate because the "actual or potential claims [to the Disputed Funds] are hostile, conflicting and mutually exclusive,

and by reason of these claims, Wells Fargo is unable to determine for itself which of the actual or potential claimants is entitled to receive the Disputed Funds." (ECF No. 2 ¶ 30). Mary counters that an interpleader action is not appropriate because there are no actual or potential conflicting claims to the Disputed Funds. (ECF No. 25, at 1).

Wells Fargo was justified in bringing an interpleader action even though all potential claimants now appear to agree that Mary is entitled to the Disputed Funds. Plaintiff is a disinterested stakeholder seeking a judicial determination as to the proper claimant to the Disputed Funds. Although Plaintiff's concerns turned out to be unjustified, it had a reasonable and legitimate fear that there may have been multiple claimants to the Disputed Funds. (*See* ECF No. 2 ¶¶ 25-30). Prior to filing its complaint, Plaintiff contacted Todd in an attempt to determine the nature of the funds but received an unsatisfactory response. (ECF No. 29, at 3). "[I]t is immaterial whether the stakeholder believes that all claims against the fund are meritorious. Indeed, in the usual case, at least one of the claims will be quite tenuous." 7 Wright, Miller, & Kane, *supra* § 1704. Some of the alleged potential claims on the Disputed Funds are, in fact, quite tenuous, and come close to falling below a meaningful threshold level of substantiality. Interpleader is appropriate, however, given courts' liberal

9

allowance of interpleader actions under § 1335 and the statute's equitable purpose to "protect the [plaintiff] from multiple, inconsistent judgments and relieve it of the obligation of determining which claimant is entitled to the fund." *Sec. Ins. Co. of Hartford v. Arcade Textiles, Inc.*, 40 F.App'x 767, 769 (4th Cir. 2002). Plaintiff may have been able to avoid bringing an interpleader action by performing a more thorough investigation into the Disputed Funds, but § 1335 relieves Plaintiff of some of its burden to do so. Moreover, Mary's response to the motion seeks an order directing Wells Fargo to pay the Disputed Funds to her. Dismissal of the interpleader, however, would not achieve that result.

Accordingly, Plaintiff will be directed to deposit with the Clerk a check in the amount of the Disputed Funds plus interest. When the clerk receives and deposits the check, Plaintiff will be discharged from further liability regarding the Disputed Funds and will be dismissed from this action. Defendants will be enjoined from instituting or prosecuting any further legal proceedings against Plaintiff arising out of the Disputed Funds.

### 2. Plaintiff's Request for Attorney's Fees and Costs

Plaintiff seeks $4,697.00 in attorney's fees and costs for this interpleader action. (ECF No. 29, at 2). It contends that attorney's fees and costs are appropriate because "the entire proceeding could have been avoided if Defendant Todd Eastham . .

. had properly opened a trust account for administering his father's assets and, subsequently, cooperated with Wells Fargo when questions were raised in October 2015 about the large sums being transferred through his account." (*Id.* at 3). State Farm counters that attorney's fees and costs are not warranted here because there never were any actual or potential conflicting claims to the Disputed Funds. (ECF No. 27, at 2). State Farm contends that an interpleader action was inappropriate — or at least unnecessary — in this case because Mary was the only person who ever claimed a right to the Disputed Funds. (*Id.* at 4). Mary also objects to the court ordering any fees and costs be paid to Plaintiff from the Disputed Funds, arguing that Todd, if anyone, should be liable. (ECF No. 25, at 2).

"[I]t is within the discretion of the court to award the [interpleader] costs including a reasonable attorneys' fee out of the deposited fund." *Coppage v. Ins. Co. of North America*, 263 F.Supp. 98, 100 (D.Md. 1967). Courts often award costs and attorney's fees "whenever it is fair and equitable to do so." *Combined Ins. Co. of America v. Christian*, No. 1:14CV647, 2015 WL 5022379, at *3 (M.D.N.C. Aug. 24, 2015) (citing *Sun Life Assurance Co. of Canada v. Sampson*, 556 F.3d 6, 8 (1st Cir. 2009)). Rejecting an interpleader's request for attorney's fees and costs, the court in *Coppage* explained:

> The Court is not prepared to say that [the interpleaders'] fears were not bona fide, but . . . they were without substance. No one other than [one claimant] had made claim against either of the [interpleaders]; and even when invited to file claims herein, only one of the other commissioners did so, and he withdrew his claim.
>
> There is no losing claimant who made the litigation necessary, and against whom counsel fees and costs might ultimately have been assessed. Any allowance of costs and counsel fees to [the interpleaders] in this case would therefore have to be borne by plaintiff receiver, who has consistently and successfully contended that he is the only one entitled to any part of the fund. This is not a case where a stakeholder has performed a service to the claimants by initiating a proceeding in court. To the contrary, [the interpleaders] alone received any benefit from those services, and their unjustified fears have required counsel for [the claimants] to expend a considerable amount of time on the case, for which they will have to be compensated. To require the claimants against the receivership estate of Chesapeake also to bear the fee of [the interpleaders'] counsel would be unjust, and is not required or warranted by the law of Maryland or federal law, whichever may be applicable. Under the circumstances of this case equitable principles dictate that the Court should exercise its discretion to require that the large fee for services rendered to [the interpleaders] by their counsel should be borne by [the interpleaders] themselves and not by the injured persons and others having claims against Chesapeake.

263 F.Supp. at 101.

The court's reasoning *Coppage* counsels against awarding attorney's fees and costs to Plaintiff here. Although

Plaintiff's filing of this interpleader action was allowed under § 1335, it was not necessary, and it does not warrant an award of attorney's fees and costs. From before this litigation began through the present, each defendant in this action has consistently maintained that Mary is the sole claimant to the funds. Plaintiff could have taken steps to assuage its concern regarding multiple potential claimants to the Disputed Funds without initiating an interpleader action that required five additional parties to spend time and money in litigation. *See* 7 Wright, Miller, & Kane, *supra* § 1719 (noting that courts often deny costs and fees when an interpleader brings an action "prematurely or without sufficient basis for believing that it will be subjected to multiple vexation"). Moreover, Plaintiff froze the Disputed Funds as they were on their way to the rightful claimant. It would not be equitable for Mary to pay Plaintiff's attorney's fees and costs out of the Disputed Funds when Plaintiff itself caused the dispute. *See Pro-Steel Bldgs., Inc. v. United States*, 810 F.Supp.2d 1302, 1305 (N.D.Fla. 2011) (noting that "an interpleader plaintiff may recover its reasonable attorney's fees and costs, so long as the plaintiff *did not cause the conflicting claims*, was disinterested, and acted in good faith" (emphasis added)).

In short, Plaintiff is entitled to utilize § 1335 to dispel its concerns about potential competing claims with greater

13

certainty, but it is not necessarily entitled to recover attorney's fees and costs. *Cf. Travelers Indem. Co. v. Israel*, 354 F.2d 488, 490 (2$^d$ Cir. 1965) (noting, in upholding a denial of attorney's fees and costs, that the court was "not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business of their insureds by bringing an action for interpleader"). Accordingly, Plaintiff's request for attorney's fees and costs will be denied.

### III. Realignment of Parties and Mary's Motion for Entry of Default

Mary moves for entry of default against Todd and the Trust. (ECF No. 28). Neither Todd nor the Trust has taken formal action in this case, and Todd's attorney conveyed to State Farm that he intends to take default. (ECF No. 27-1). This case and Mary's motion for default cannot, however, be resolved in the present posture. Accordingly, Mary will be designated as the plaintiff for future proceedings, and Todd, the Trust, Barbara, and State Farm will remain as defendants. *See* 7 Wright, Miller, & Kane, *supra* § 1714 ("At this juncture, each claimant occupies an adversary position to the others and must proceed accordingly."). Following realignment, Mary's motion for entry of default will be granted. Counsel for the remaining parties

will be directed to confer and notify the court whether further pleading or discovery is requested.  If, as it appears, neither further pleading nor discovery is necessary, the case may proceed by judgment on the pleadings or on summary judgment. Any motions addressing present claims to the Disputed Funds must be filed within 30 days.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's motion will be granted in part and denied in part, and Mary's motion for entry of default against Todd and the Trust will be granted.  A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge